**Susan MCGREGOR, Plaintiff—Appellee,**

v.

**PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, Defendant—Appellant.**

No. 02–16817, 02–17115.

D.C. No. CV 97–2938 PJH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Decided Jan. 15, 2004.

Daniel U. Smith, Esq., Kentfield, CA, Francis J. Torrence, Esq., Seyfarth Shaw, Alice J. Wolfson, Esq., Bourhis & Wolfson, San Francisco, CA, for Plaintiff–Appellee.

Deanna L. Johnston, Esq., Francis J. Torrence, Esq., Seyfarth Shaw, San Francisco, CA, for Defendant–Appellant.

Before HUG, B. FLETCHER, and TASHIMA, Circuit Judges.

## MEMORANDUM *

The Paul Revere Life Insurance Company ("Paul Revere") appeals the denial of its motions for judgment as a matter of law ("JMOL") and for a new trial, following a verdict in favor of Susan McGregor, and the denial of its motion for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.[1]

### I.   Motion for JMOL

We review the denial of a JMOL motion de novo. *Janes v. Wal–Mart Stores Inc.,*

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts, we do not recite them here except as necessary to aid in understanding this disposition.

279 F.3d 883, 886 (9th Cir.2002). We will reverse the jury's verdict only if it is not supported by substantial evidence. *See Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir.1999).

### A. Breach of Contract

Under McGregor's occupational disability policy (the "Policy"), she is entitled to "Total Disability" benefits if, "because of Injury or Sickness," she is: (1) "unable to perform the important duties of [her] regular occupation;" (2) "not engaged in any other gainful occupation;" and (3) "under the regular and personal care of a Physician." Whether McGregor is totally disabled under the Policy is a question of fact. *Erreca v. W. States Life Ins. Co.,* 19 Cal.2d 388, 121 P.2d 689, 696 (Cal.1942).

### 1. *The Important Duties of McGregor's Occupation*

■ Under the Policy's first "Total Disability" requirement and California law, McGregor must be unable to perform *all* of her important occupational duties in order to receive benefits. *See Erreca,* 121 P.2d at 695–96; *Austero v. Nat'l Cas. Co.,* 84 Cal.App.3d 1, 148 Cal.Rptr. 653, 666 (Ct.App.1978) (applying *Erreca* to occupational disability policies) *disapproved on other grounds, Egan v. Mut. of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (Cal.1979). Although the phrase "important duties" is not defined in the Policy, we consider "the *actual* employment prospects of the insured ... in determining the duties of an insurer under a disability policy." *Moore v. Am. United Life Ins. Co.,* 150 Cal.App.3d 610, 197 Cal. Rptr. 878, 891 (Ct.App.1984).

The parties dispute whether McGregor's inability to stenotype rendered her unable to perform all of the "important duties" of a court reporter. We conclude that it does—a person who cannot stenotype cannot work as a court reporter.

California law defines the duties of a court reporter as "the making, by means of written symbols or abbreviations in shorthand or machine shorthand writing, of a verbatim record of any oral court proceeding ... and the accurate transcription thereof." Cal. Bus. & Prof.Code § 8017. McGregor's description of her "important duties" and her characterization of "scoping" as a separate occupation, are consistent with the description of a court reporter in the Business and Professions Code. Paul Revere's own expert testified that "scoping" is "a different occupation than court reporting" and that a person who cannot stenotype does not meet the Code's definition of a court reporter.

We must draw all inferences in favor of the non-moving party, and the testimony of McGregor, Judge Chiantelli, Dr. Markison, Demers and Koren, all support an inference that McGregor was physically incapable of stenotyping for the length of time, and at the pace, required of even a part-time court reporter. Moreover, the fact that Paul Revere paid McGregor benefits for 16 months while she was not working provides additional evidence that the inability to stenotype rendered McGregor eligible for "Total Disability" benefits.

In short, McGregor presented substantial evidence for the jury to find that, despite her ability to proofread and edit transcripts stenotyped by other court reporters, her inability to stenotype renders her unable to perform the important duties of a court reporter. *See Austero,* 148 Cal. Rptr. at 668 n. 21 ("plaintiff was simply not performing what the jury considered to be the substantial and material duties most attorneys perform").

### 2. *Regular and Personal Care of a Physician*

■ The policy does not define what it means to be "under the regular and personal care of a Physician." Nevertheless, it is undisputed that McGregor was not denied benefits for failing to be under a doctor's regular care. Additionally, Demers testified that McGregor not seeing her doctor quarterly was "not a big deal. You know, we think that she's complying with the requirement for the vast majority of the claim." We conclude that substantial evidence supports the jury's finding that McGregor satisfied this Policy requirement, or that the failure to be under a physician's regular care was immaterial to coverage.

### B. Breach of the Covenant of Good Faith and Fair Dealing

■ The ultimate question in a bad faith claim is "whether or not the insurer's denial of coverage was reasonable." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001). A court may find that an insurer's denial of a claim is not unreasonable, as a matter of law, if it finds that the insurer denied benefits because of a "genuine dispute" as to coverage. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 108 Cal.Rptr.2d 776, 784 (Ct.App.2001).

McGregor offered substantial evidence for the jury to find that there was no genuine coverage dispute and that Paul Revere denied McGregor's benefits unreasonably. First, the jury simply could have concluded that Paul Revere's reading of the total disability provision was unreasonable and did not create a genuine coverage dispute. Second, it is not disputed that

McGregor received benefits for 16 months under the Policy while she was not working. Moreover, Paul Revere terminated McGregor's benefits despite having "questions regarding total disability versus partial disability and choice." Accordingly, the jury could have concluded that Paul Revere developed its theory that "scoping" was an important duty of being a court reporter solely for this litigation. *Chateau Chamberay*, 108 Cal.Rptr.2d at 784 (noting reasonableness determined as of the time benefits were terminated).[2]

Because substantial evidence was before the jury regarding whether a reasonable and legitimate dispute actually existed, the genuine dispute doctrine is not applicable. *See id.* at 785 n. 7 (noting doctrine is inapplicable where there is a "dispute as to the *underlying facts*"). Ultimately, this is the type of case where the reasonableness of an insurer's conduct was a factual question appropriately left for the jury.

### C. The Present Value of Future Benefits

■ An insured who proves breach of the covenant of good faith and fair dealing may recover both accrued and future policy benefits. *Egan*, 169 Cal.Rptr. 691, 620 P.2d at 149 n. 7 ("[T]he jury may include in the compensatory damage award future policy benefits that they reasonably conclude, after examination of the policy's provisions and other evidence, the policy holder would have been entitled to receive had the contract been honored by the insurer."); *see also Pistorius v. Prudential Ins. Co.*, 123 Cal.App.3d 541, 176 Cal.Rptr. 660, 665–66 (Cal.Ct.App.1981). In this case, the jury awarded McGregor $336,874 in future benefits. We affirm this award be-

---

**2.** Although Paul Revere also argues that it reasonably relied on conflicting medical evidence regarding McGregor's ability to stenotype, it is apparent from the letter terminating McGregor's benefits that this was not the basis for terminating her claim and thus cannot form the basis of the genuine dispute. *See Chateau Chamberay*, 108 Cal.Rptr.2d at 784.

cause McGregor presented substantial evidence that she would have been entitled to receive disability benefits in the future if Paul Revere had honored its contract.

Following the language of Paul Revere's "Total Disability" provision, McGregor was required to show that in the future she (1) would be unable to perform the important duties of a court reporter; (2) would not "engage[ ] in any other gainful occupation;"[3] and (3) would remain under "the regular and personal care of a Physician." We begin with the first and third requirements.

McGregor presented substantial evidence that she would never again be able to perform the important duties of court reporting and that she would continue to receive regular and personal physician care. Doctor Markison described McGregor's total disability as "permanent." McGregor testified that she would always be under the care of a physician, and she presented evidence that she had received treatment regularly in the past and that

Paul Revere viewed her as having complied sufficiently with its "regular and personal care" requirement.

With respect to the second requirement—that McGregor not perform any other occupation—McGregor testified that she plans not to work because she is unable to continue with the only career she has ever known; because she wants to spend all available time with her ill husband; and because she never again wants to have any relationship with Paul Revere.[4] This testimony was not unduly speculative: the terms of Paul Revere's policy provide McGregor with an incentive not to work, and McGregor carefully explained why she had chosen to retire.[5]

■ The district court believed some of McGregor's testimony to be irrelevant, particularly testimony regarding her poor relationship with Paul Revere. The district court understood McGregor to have testified that she would not work again *"because* of [Paul Revere's] breach," and the court emphasized that in deciding

---

**3.** We note that McGregor was not required to prove that she could not engage in any other occupation, only that she would not.

**4.** In dissent, Judge Tashima states that McGregor was only asked "why she had never engaged in 'any other gainful occupation' " in the past, rather than whether she would ever engage in any other gainful occupation in the future. We do not agree with this characterization of McGregor's testimony.

The trial transcript shows that on direct examination regarding the issue of future benefits, McGregor's attorney asked McGregor: "Have you ever engage [sic] in any other gainful occupation?" It is apparent from this quotation that either McGregor's attorney misspoke or the court reporter erred in transcribing his question. Because McGregor's response focused on why she does not intend to work in the future, rather than on whether she had worked in the past, the best interpretation of this obvious error is that McGregor's attorney either intended to ask or did actually

ask: *"Will* you ever engage in any other gainful occupation?"

Paul Revere certainly understood this to have been the point of the questions asked and testimony given on direct. Paul Revere's attorney stated during cross-examination that he understood McGregor to have testified on direct that she would "never ever, ever do any work for income." What's more important, that's what the jury understood.

**5.** As the dissent points out, McGregor worked for some months before Paul Revere terminated her benefits. McGregor also admitted on cross-examination that in 1996 she worked as a scopist for two months after her benefits had been terminated. There is no evidence, however, that McGregor worked in any capacity after December 1996, and her decision not to work after that point supports the jury's conclusion that McGregor had chosen to retire completely and was therefore entitled to the present value of future benefits under the Policy's "Total Disability" provision.

whether to award future benefits, the jury should have assumed that Paul Revere had honored its contract. *See Egan,* 169 Cal. Rptr. 691, 620 P.2d at 149 n. 7. We do not agree with this aspect of the district court's analysis. McGregor's poor relationship with Paul Revere depends not on the fact of a breach, but on the insurer's entire course of conduct. Even if the jury ultimately had reached a different legal conclusion with respect to the insurer's breach, McGregor likely would still want to avoid future contact with Paul Revere.

In sum, we affirm the jury's future benefits award because McGregor presented substantial evidence that she is permanently disabled as a court reporter, will not work in any other occupation, and will continue to comply with the policy's requirement that she remain under the "regular and personal care of a Physician."

## II.   Motion for Partial New Trial

### A.   Emotional Distress Damages

■ We review the trial court's determination that the jury's verdict was not excessive under state law for an abuse of discretion. *See Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 434–36, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). "[T]here is no fixed or absolute standard by which to compute the monetary value of emotional distress." *Pool v. City of Oakland,* 42 Cal.3d 1051, 232 Cal.Rptr. 528, 728 P.2d 1163, 1172 n. 17 (Cal.1986) (internal quotation marks omitted). However, a jury's award of emotional distress damages may be reversed "[w]hen the award, as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice." *Cunningham v. Simpson,* 1 Cal.3d 301, 81 Cal.Rptr. 855, 461 P.2d 39, 43 (Cal.1969).

The parties do not dispute that there was sufficient evidence to support some award of emotional distress damages. Although Paul Revere argues that the award of $616,000 in this case is excessive in light of the emotional distress awards in comparable cases, the California Supreme Court has discouraged a comparative analysis of emotional distress awards. *See Pool,* 232 Cal.Rptr. 528, 728 P.2d at 1172 n. 17. Rather, the trial court's ruling should be afforded "deference because having been present at the trial, the trial judge was necessarily more familiar with the evidence." *Id.* at 1172 (internal quotation marks omitted); *see Iwekaogqe v. Los Angeles,* 75 Cal.App.4th 803, 89 Cal.Rptr.2d 505, 518 (Ct.App.1999) (affording deference to trial court).

At trial, McGregor testified to feeling betrayed, upset, fearful and paranoid; she also experienced vomiting, trouble sleeping, and anxiety about money. We conclude that the trial judge—who had the benefit of observing the witnesses and assessing the degree of emotional harm caused—did not abuse her discretion by finding that the emotional distress award was not excessive.

### B.   Sufficiency of the Evidence

"[W]e review for abuse of discretion the district court's denial of a motion for a new trial grounded on the assertion that the jury's verdict was against the clear weight of evidence." *Gilbrook,* 177 F.3d at 856. As discussed above, we believe that McGregor's inability to stenotype rendered her disabled from court reporting. We thus also conclude that the district court did not abuse her discretion by finding that the jury's verdict was not against the clear weight of evidence.

### C.   Evidentiary Challenges

"To reverse a jury verdict for evidentiary error," Paul Revere must show that the

trial judge abused her discretion and that the error was prejudicial. *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir.2001). "[A] reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." *Id.*

### 1. *Evidence Regarding McGregor's Husband and Granddaughter*

■ The trial court did not abuse its discretion by denying Paul Revere's new trial motion based on evidence of McGregor's husband's leukemia and her granddaughter's death. Defense counsel opened the door to the testimony regarding McGregor's husband's leukemia by inquiring about whether McGregor stopped looking for work in 1994. Moreover, any evidentiary error in permitting McGregor to testify on redirect about her granddaughter was harmless because similar information was admitted into evidence as part of the claim file.

### 2. *Future Damages*

Paul Revere also contends that the trial judge abused her discretion by permitting the claim for future benefits to proceed to the jury without permitting Paul Revere to call a live rebuttal witness. Following the original motion for JMOL, however, the trial judge was required to give McGregor a chance to cure her evidentiary deficiencies. *Waters v. Young*, 100 F.3d 1437, 1441–42 (9th Cir.1996). The trial court also gave Paul Revere the opportunity to call another witness: "If you want to bring the jury back next week because you want to bring in another witness, I'll consider going next week." Instead, Paul Revere opted to read its witness' declaration into the record, rather than having the trial prolonged.

In denying Paul Revere's motion for new trial, the district court found that "(a)

defendant chose not [to] accept the court's invitation to argue that the trial should remain open for another week, and (b) defendant did get the evidence before the jury." The trial judge did not abuse her discretion.

### 3. *Punitive Damages*

■ We agree with the district court that the jury—which found Paul Revere's conduct unreasonable—also could have found that Paul Revere acted with "oppression, fraud, or malice." Cal. Civ.Code § 3294(a). As the trial court noted:

> Viewing the evidence in plaintiff's favor, a reasonable jury *could* find clear and convincing evidence that Paul Revere's stated rationale for terminating the benefits was false, and that to this day it has yet to explain the reason it terminated benefits. In other words, a reasonable jury could find either the required fraud or malice necessary to award punitive damages. The fact that the jury did not does not make it error to have given them the opportunity.

The trial judge did not abuse her discretion by letting the jury decide the issue of punitive damages.

### D. McGregor's Closing Argument

■ Where, as here, a party fails to object at trial to counsel's closing argument, a new trial may be granted only if the party shows a "plain or fundamental error" that calls into "serious" question "the integrity or fundamental fairness of the proceedings in the trial court." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir.2001); *see Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir.2002) (listing elements of plain error review), *cert. denied*, 537 U.S. 1110, 123 S.Ct. 854, 154 L.Ed.2d 781 (2003).

As a threshold matter, Paul Revere has not properly challenged counsel's closing argument on this appeal. *See* Fed. R.App. P. 28(a)(9)(A) (requiring citations to the "parts of the record on which the appellant relies"). Even if Paul Revere had properly identified the portions of the closing argument it considers improper, the trial court repeatedly found that each portion of the closing argument was either harmless or not so egregious as to cast doubt on the validity of the verdict. We conclude that the trial judge gave due consideration to the effect of the entire argument and that the argument did not cause a miscarriage of justice.

### E. *Daubert* Motion to Exclude Dr. Markison's Testimony

Expert testimony is admissible if it is both reliable and relevant. *See* Fed. R.Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial judge must make a reliability determination on the record to fulfill her "gatekeeping" function. *Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1066 (9th Cir.2002), *amended by* 319 F.3d 1073 (9th Cir.2003) (distinguishing cases where the district court made "explicit findings of reliability," from cases where there was a "complete failure to make any reliability finding"). Even if expert testimony is erroneously admitted, "the jury's verdict is reversible on appeal only if [Paul Revere] can demonstrate that the error was not harmless." *Id.*

While the trial judge's findings here were brief, they were sufficient to establish that she did not abdicate her gatekeeping role. Moreover, even assuming that the trial court erred in finding that Dr. Markison's opinion was reliable, the error was harmless because, as McGregor's treating physician, Dr. Markison would have been permitted to provide almost all of the testimony he provided as an expert.[6]

### III. Motion for Summary Judgment

Paul Revere contends that the district court erred in denying its motion for summary judgment on the breach of contract and bad faith claims and with respect to punitive damages. We have, however, consistently "refuse[d] to review the district court's denial of summary judgment after there has been an adverse jury verdict." *Dixon v. Wallowa County,* 336 F.3d 1013, 1017 (9th Cir.2003) (citations omitted).

### IV. Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.[7]

TASHIMA, Circuit Judge, concurring in part and dissenting, in part.

TASHIMA, Circuit Judge.

I concur in all of the majority's disposition, except for Part I.C, from which I respectfully dissent. The majority misapplies the future benefits rule of *Egan v. Mut. of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 149 n. 7 (Cal. 1979). When the rule is correctly applied,

---

**6.** We also conclude that the trial court did not abuse its discretion by finding that cross-examination was the proper vehicle for addressing Paul Revere's attacks on Dr. Markison's credibility. *See Daubert,* 509 U.S. at 596, 113 S.Ct. 2786 ("gatekeeping" role is no substitute for "[v]igorous cross-examination").

**7.** McGregor may file a separate motion to recover the portion of her attorney's fees incurred on appeal to obtain the Policy benefits. *See Brandt v. Superior Court,* 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796, 798–801 (Cal.1985).

I disagree that substantial evidence supports the award of the present value of future benefits in this case.

As the majority correctly states, an insured can recover the present value of future "Total Disability Benefits" that the jury reasonably concludes she "would have been entitled to receive had the contract been honored by the insurer." *Id.* *Egan* requires that whether the insured would "engage[ ] in any other gainful occupation" be answered as of the date of the insurer's breach and not as of the date of the verdict. In other words, under *Egan*, the jury is required to consider what would have happened if the contract had *not* been breached. Contrary to this rule, the majority looks at the issue as of the date of the trial and considers events that occurred as a result of Paul Revere's breach to sustain its position. *See* Maj. dispo. at 418 ("Even if the jury ultimately had reached a different legal conclusion with respect to the insurer's breach, McGregor likely would still want to avoid future contact with Paul Revere.").

The picture is quite different, however, if we look at the question as of the date of Paul Revere's breach. First, contrary to the majority's characterization of McGregor's testimony, she was not asked why she will not work in the future; instead, when asked why she had never engaged in "any other gainful occupation," McGregor gave three reasons: (1) her lack of job skills; (2) her husband's health; and (3) her relationship with Paul Revere.[1]

As to her job skills, McGregor testified that "the only job skill that [she] had really was court reporting." Everyone,

including McGregor, agrees, however, that "scoping" is a separate occupation from "court reporting." Thus, this testimony is not entitled to any credence. By McGregor's own admission, she engaged in scoping for other court reporters after the onset of her disability.

The majority also states that McGregor testified that she will never work again because "she wants to spend all available time with her ill husband." Maj. dispo. at 417. Her precise testimony, however, when explaining why she had never engaged in an occupation other than "court reporting" was, "Of course, another reason is that, you know, my husband's health, he's my primary purpose in life *right now.*" (Emphasis added.) McGregor did not testify that she will never work again because of her husband's needs, there is no evidence of how long the leukemia would linger (*i.e.,* whether McGregor's husband's illness would last the rest of her working life), and the trial court rejected a proffer that evidence of her husband's leukemia was relevant to show why she was not pursuing work.

As to McGregor's testimony that she would never work again because of her relationship with Paul Revere, the trial court correctly rejected it as speculative and irrelevant:

> This testimony is not only speculative, it is irrelevant. The *Egan* court's language is brief but clear—plaintiff is allowed to recover benefits she "would have been entitled to receive *had the contract been honored by the insurer.*" *Egan,* 24 Cal.3d at 824 n. 7, 169 Cal. Rptr. 691, 620 P.2d 141 (emphasis add-

---

1. The majority states that McGregor was actually asked whether she *"Will ...* ever engage in any other gainful occupation?" Maj. dispo. at 417 n. 4. Her answer, however, was initially in the past tense: "No.... The only job skill that I *had* really was court report-

ing...." (Emphasis added.) While McGregor may have altered her tenses throughout her answer, and provided different testimony on cross-examination, her direct testimony was clearly in response to a question about her prior work experience.

ed); *Pistorius,* 123 Cal.App.3d at 551, 176 Cal.Rptr. 660. Plaintiff's testimony did not focus on benefits plaintiff would have been entitled to had the breach never occurred, but rather on plaintiff's intentions in light of and indeed due to the breach by defendant. Plaintiff argued that *because* of the breach, and even because of the nature of the litigation that followed, plaintiff would not work in the future. That is simply irrelevant to the recovery of future benefits under *Egan,* as indeed it should be.

Because this testimony was inadmissible and because it was the only evidence regarding McGergor's future compliance with the Policy, in its absence, the jury could not reasonably conclude that she was entitled to future benefits.

Moreover, even if admissible, McGregor's testimony did not amount to substantial evidence sufficient to sustain the verdict on future damages. While McGregor testified that she engaged in no gainful employment for 16 months during 1992 through 1996, while Paul Revere honored her claim, it is undisputed that she worked during the remainder of her claim period. Moreover, on cross-examination, McGregor admitted to working as a "scopist" in November and December 1996, after Paul Revere terminated her benefits on September 27, 1996. Thus, McGregor worked for approximately 30 months while receiving benefits and for at least two months after her benefits were terminated.

Thus, McGregor's testimony notwithstanding, no jury could conclude with reasonable certainty that McGregor would not have worked again from the date of the breach, if the contract had been honored and this litigation had not occurred.[2] The only reasonable inference from McGregor's testimony is the one reached by the trial judge—McGregor believes she will not work in the future because of the breach and the litigation that followed—this would not entitle McGregor to future damages under the rule of *Egan.*

Therefore, I would reverse the denial of Paul Revere's JMOL motion, in part, and the corresponding award of $336,874, representing the present value of future benefits.

---

**2.** While the majority is correct in pointing out that no evidence was presented that McGregor worked after December 1996, the point is of little evidentiary significance in light of the fact that McGregor filed this action only eight months later, on August 8, 1997.

