**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0425n.06

No. 08-3366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 18, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| R.H. COCHRAN & ASSOCIATES, INC., | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| | ) OHIO |
| SHEET METAL WORKERS | ) |
| INTERNATIONAL ASSOCIATION LOCAL | ) |
| UNION NO. 33, | ) |
| Defendant-Appellant. | ) |

**Before: CLAY and GIBBONS, Circuit Judges; and GREER, District Judge.**[*]

**GREER, District Judge**. Sheet Metal Workers International Association Local Union No.
33 (the "Union") appeals the district court's grant of summary judgment in favor of R.H. Cochran
& Associates, Inc. ("Cochran") which vacated an arbitration award in the Union's favor. For the
reasons set forth below, we AFFIRM the decision of the district court.

**I.**

Cochran is in the business of testing and balancing of heating, ventilation, and air
conditioning systems, and the Union represents Cochran's employees pursuant to the terms of a
collective bargaining agreement ("CBA"). Addendum D of the CBA requires that Union employees
be paid $0.60 per mile for all travel outside the district. Beginning in late 2004, Cochran altered its

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

travel pay policy and began to pay its employees $0.10 per mile, plus their regular hourly wage, for travel time. In early 2006, Cochran laid off all of its personnel.

Article X of the CBA allows the Union to pursue grievances on behalf of its members. Article X provides that, "[t]o be valid," grievances must be filed within thirty days of the occurrence giving rise to the grievance or, if the occurrence is not ascertainable, within thirty days of the first knowledge of the facts giving rise to the grievance. In May, 2006, a laid-off Cochran employee contacted the Union business agent responsible for Cochran and complained about the travel pay policy. On June 21, 2006, another former Cochran employee complained about the travel pay policy to a Union business agent named Mike Coleman ("Coleman"). On August 2, 2006, the Union filed a grievance against Cochran on behalf of four laid-off Cochran employees, alleging a violation of the CBA's travel pay provisions.

A hearing on the grievance was scheduled on September 12, 2006, by the Local Joint Adjustment Board ("LJAB"), an arbitration panel. No verbatim record of the proceedings by the LJAB was made. Rather, the arbitration panel kept minutes of the proceedings. The LJAB issued its decision on the day of the hearing and found that Cochran had violated the travel pay policy and ordered the hiring of an auditor to determine the exact amount owed to the employees. After the audit, the arbitration panel determined that payments totaling $40,862.78 were due to the four laid-off Cochran employees.

On March 16, 2007, Cochran filed a complaint in the district court to vacate the arbitration award. The Union filed a counter-claim seeking enforcement of the arbitration decision. Cochran asserted in its complaint that the arbitration panel exceeded its authority by resolving a dispute not

committed to arbitration by the CBA, *i.e.*, that the grievance was not filed by the Union within thirty days of the Union's first knowledge of the facts giving rise to the grievance. The parties filed cross-motions for summary judgment. The district court granted Cochran's motion, denied the Union's motion and vacated the arbitration award. In vacating the arbitration award, the district court found that the arbitrators, by ruling on an untimely filed grievance, acted outside the scope of their authority.

**II.**

"When a district court decides to confirm or vacate an arbitration award, we review its legal conclusions *de novo* and its factual findings for clear error." *Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Service, Inc.*, 335 F.3d 497, 503 (6th Cir. 2003); *Electronic Data Systems Corp. v. Donelson*, 473 F.3d 684, 687-88 (6th Cir. 2007);. "[C]ourts play only a limited role when asked to review the decision of an arbitrator." *Tennessee Valley Authority v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam). Indeed, "[a] court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (quoting *Tennessee Valley Authority*, 184 F.3d at 515). In deciding whether to confirm or vacate a labor arbitration award, a federal court must ask:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

No. 08-3366

*Michigan Family Resources, Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*).

## III.

The second and third of the *Michigan Family Resources* inquiries are not implicated in this appeal. Furthermore, the parties agree that the arbitrability of a grievance under the CBA at issue in this case is determined by its timeliness. And, neither party argues that an arbitrator acts within the scope of his authority if he decides an untimely grievance on the merits.[1]

The Union, while acknowledging that an untimely filed grievance would be a matter not committed to arbitration and that an arbitrator exceeds his authority by resolving a matter not committed to arbitration, see Br. of Appellant at 12, nevertheless contends that Cochran waived any objection to the timeliness of the grievance by failing to make objection to the arbitration panel.[2] We construe this argument as an attack on the district court's factual finding that Cochran did in fact raise its objection before the arbitration panel and that the arbitration panel, by deciding the grievance on the merits, acted outside the scope of its authority. The Union further contends that the district court erred by assuming a fact-finder role by considering certain post-arbitration affidavits and deposition transcripts that had not been presented to the arbitration panel.

---

[1] In *Michigan Family Resources*, although the "scope of authority" concept was severely curtailed, we stated: "An arbitrator does not exceed his authority every time he makes an interpretative error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Michigan Family Resources*, 475 F.3d at 756.

[2] The Union does not argue in this Court that the grievance was timely filed. It argues only that Cochran waived its objection to the timeliness of the grievance by not raising the objection before the arbitration panel.

4

Cochran responds that the Union waived its affirmative defense of a waiver by failing to raise that defense until its motion for summary judgment, that the Union "invited" the district court to review the post-arbitration affidavits and deposition transcripts and that the district court did not clearly err in its factual determination that Cochran had not waived its objection but had, in fact, raised it before the arbitration panel.

### A. Did the Union waive its waiver defense by not raising it until its motion for summary judgment?

Cochran filed its complaint to vacate the arbitration award on March 16, 2007, and the Union filed its answer on April 27, 2007. The Union's answer did not raise a defense of waiver. Cochran's amended complaint was filed on June 19, 2007, and the Union's answer was filed on June 20. The answer to the amended complaint likewise did not raise the waiver defense. Then, on July 9, 2007, the Union filed its motion for summary judgment and, for the first time, argued that Cochran had waived its right to challenge the timeliness of the grievance.

Federal Rule of Civil Procedure 8(c) requires certain affirmative defenses, including the defense of waiver, to be stated in the answer. Fed. R. Civ. P. 8(c)(1). In fact, "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). As the Union points out, however, "failure to raise an affirmative defense by a responsive pleading does not always result in waiver." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993). "The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Id*. (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971)). A

defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced. *Id.* (citing *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)).

Here, the Union raised the issue of waiver in its motion for summary judgment less than three months after its initial answer was filed. Cochran was thus aware the Union intended to rely on the defense, had ample time and opportunity to respond to the defense and does not suggest any prejudice as a result. The district court carefully considered both parties' positions on the issue and ruled on the issue in its memorandum opinion and order. Under these circumstances, we decline to find that the Union waived the defense by failing to raise it in its answer.

> **B.** **Did the district court clearly err in its finding that Cochran had raised its timeliness objection before the arbitration panel?**

"A party may waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). As noted above, a district court's findings of fact in an arbitration matter are reviewed for clear error. "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilpatrick*, 548 F.3d 479, 484-85 (6th Cir. 2008) (quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). While the evidence of record on the issue is scant and the question of whether the district court's finding that the timeliness objection was raised before the arbitration panel is admittedly close, we cannot say, applying the deferential standard of review, that the district court committed clear error.

Noting that the arbitration panel's minutes were not a verbatim transcript of what transpired before the arbitration panel, the district court found in the panel's minutes evidence "strongly suggestive" that Cochran did, in fact, raise the timeliness issue before the arbitration panel. The minutes of the panel reflect that one of the aggrieved employees, Charles McArthur, Jr., testified before the arbitration panel. The minutes reflect that McArthur called Andy Farmer, a Union representative, about Cochran's change in travel policy three months after he was laid-off and that Farmer then called Cochran "right away." JA, 412. Richard Hansen, another of the aggrieved employees, was asked if he was present when McArthur called Farmer "[i]n May" and he responded affirmatively.[3] JA, 425.

The minutes also reflect an exchange involving Mike Coleman, representative of the Union, John Balanik, a representative of Cochran, Lou Barbian, one of the aggrieved employees, and the chairman of the arbitration panel. The minutes state:

Mike called in Lou Barbian.

The Chair explained the proceedings.

Mike asked Lou: Did you use your vehicle for personal use?

Lou responded: No.

Mike asked: Were you required to be on the job for eight hours, so if you started at 7:00 you stayed on the job until 3:30 p.m.?

Lou responded: Yes.

---

[3] The arbitration panel minutes do not reflect the year in which the call was made. The district court reasonably concluded, however, that this was irrelevant since May of any year would place the filing of the grievance on August 2 outside the thirty-day window. Additionally, MacArthur testified that the call was made about three months after he was laid off. The Cochran lay-off occurred in early 2006.

Mike asked: If you rode in a vehicle as a passenger, were you compensated?

Lou responded: No.

John stated to Lou: Charles stated that he wasn't the one that contacted the Union about this ordeal; they say you were the first to contact.

Mike stated: I object. I don't know what relevancy that has with any of this.

John stated: I just wanted to know why he waited so long after he quit RH Cochran to come forward to the Union and make a complaint.

The Chair stated that once the grievance is heard, the Business Agent has 30 days to file the grievance. Like if one of my employees had a grievance, but did not tell anyone for six months and then talked to Tim Miller, he has 30 days to file the grievance. To answer your question on why Charles or anyone waited so long to go to Mike Coleman, nobody has that answer.

The final decision of the WAB made no mention of the timeliness issue. From these entries in the arbitration panel minutes, however, the district court concluded that Cochran had, in fact, raised its timeliness objection before the arbitration panel, that the evidence established that the grievance, filed on August 2, 2006, was not filed within the required 30-day period provided for in Article X of the CBA, and that the arbitration panel was therefore without authority to consider the merits of the grievance. Applying the deferential standard of clear error, we are unable to say that the district court clearly erred in making these findings.

**C.     *Did the district court engage in improper fact finding by considering evidence not presented to the arbitrator?***

The Union contends that the district court improperly relied on post-arbitration affidavits and deposition transcripts in making its factual determination and that "this extraneous information is interwoven throughout the District Court's decision and was used as a basis for vacating the arbitration panel's award." Br. of Appellant at 18. Contrary to the Union's assertions, however, it

8

does not appear that the district court based its factual finding on the affidavits or the deposition transcripts, but rather on the record of proceedings before the arbitration panel. While the district court noted that the parties had submitted contradictory affidavits as to whether Cochran raised the issue of timeliness of the grievance, the only citation to the affidavits by the district court concerned a factual dispute over whether the parties had agreed to a change in the travel policy, a matter not at issue either in the district court or before this Court.

The Union's argument fails, however, for a more basic reason. When the Union filed its motion for summary judgment in the district court, it also filed the affidavits of the business representative of the Union and the four aggrieved Cochran employees in support of its motion. The Union cited extensively to the affidavits in its memorandum in support of its motion and relied on the affidavits in an effort to establish both that the grievance was timely and that Cochran had not raised an objection by the timeliness of the grievance. Not only did the Union not object to the district court's consideration of the affidavits, it affirmatively urged the district court to do so.

It is well established that an argument not raised before the district court cannot be considered on appeal to this Court. *United States v. Universal Mgt. Ser., Inc.*, 191 F.3d 750, 758 (6th Cir. 1999). *See also White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("[t]his court will not decide issues or claims not litigated before the district court."); *Thurman v. Yellow Freight Systems, Inc.*, 97 F.3d 833, 835 (6th Cir. 1996) (vague reference to an issue in the district court does not preserve it for appeal); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) (argument not raised before the district court is not properly before us). Furthermore, to the extent the district court improperly relied on the affidavits submitted by the

9

Union, the Union invited such error. Under the invited-error doctrine, "a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *Tharo Systems, Inc. v. Cab Produkttecknik GMBH & Co. KG*, 196 F. App'x. 366, 373 (6th Cir. 2006) (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 354 (6th Cir. 2002)). This Court recently explained that

> [t]he doctrine of "invited error" is a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside . . . . Having induced the court to rely on a particular erroneous proposition of law or fact, a party in the normal case may not at a later stage of the case use the error to set aside the immediate consequences of the error.

*Ford v. County of Grand Traverse*, 535 F.3d 483, 490-91(6th Cir. 2008) (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). Although this Court has deviated from the rule when "application of the rule would result in a manifest injustice," *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 251 (6th Cir. 1991), no such circumstances exist in this case and the Union suggests no reason why it should not be precluded from complaining about the district court's consideration of affidavits submitted by it.

## III.

For the reasons set forth above, we affirm the judgment of the district court.

**CLAY, Circuit Judge, dissenting.** I dissent because there is no evidence in the record that Cochran presented its timeliness argument to the arbitration panel.

This Court has recognized that in a motion to vacate an arbitration award, arguments not raised before the arbitrator are waived. *See Order of Ry. Conductors and Brakemen v. Clinchfield R. Co.,* 407 F.2d 985, 988 (6th Cir. 1969) ("It is . . . well settled that defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect."); s*ee also U.S. Postal Service v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 752 (6th Cir. 2003) (opining that "there appears to be merit to the argument that the [employer] waived its public policy challenge to the arbitration award by failing to raise it during arbitration"); *Armco Employees Independent Federation, Inc. v. AK Steel Corp.*, 149 Fed. App'x 347, 352 (6th Cir. 2005) ("Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court."). Therefore, as the majority recognizes, if Cochran never raised the untimeliness of the Union's grievance during the arbitration hearing, that ground could not be a basis for vacating the arbitration award.

The collective bargaining agreement between Cochran and the Union states: "To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance." (J.A. at 179-80.) The district court found enough evidence in the recorded minutes of the arbitration hearing to support a finding that Cochran had raised the timeliness of the grievance at the hearing. However, no such evidence exists in those minutes.

11

The only evidence the district court cited is the exchange in which John Balanik, Cochran's representative, said to Lou Barbian, a former Cochran employee, that "[Charles McArthur, Jr., one of the aggrieved union employees] stated that he wasn't the one that contacted the Union about this ordeal; they say you were the first to contact." (J.A. at 186.) Upon objection from the Union as to the relevance of this line of questioning, Balanik told the panel, "I just wanted to know why he waited so long after he quit R.H. Cochran to come forward to the Union and make a complaint." (J.A. at 186.) Balanik's statements can only be construed as raising the untimeliness of the employee's decision to come forward and complain to the Union. However, the district court found that Balanik's statement implied that *the Union* delayed in filing a grievance *after* it received notice of the complaint from its members. The district court's reading of Balanik's statement was clear error.

Contrary to the district court's finding, the arbitrators' response to Balanik's remarks does not provide any stronger evidence that they "understood" the timeliness issue to be raised. The only arbitrator to respond was the chairman, John Sickle, who stated that "once the grievance is heard, the Business Agent has 30 days to file the grievance. Like if one of my employees had a grievance, but did not tell anyone for six months and then talked to [his Union representative,] he has 30 days to file the grievance. *To answer your question on why [McArthur] or anyone waited so long to go to [the Union], nobody has that answer*." (J.A. at 186.) (emphasis added). Sickle was clearly responding to Balanik's questioning the length of time *the employees* took to inform *the Union* of the new travel policy, not the length of time the Union took to file the grievance. If anything, Sickle appeared to be saying that Cochran's concern regarding Barbian's delay was irrelevant, because

12

regardless of when Barbian brought the policy to the Union's attention, the Union still had thirty days from that time to file the grievance.

Moreover, taking the arbitration record as a whole, there is simply no convincing evidence that Cochran ever raised the timeliness of the Union's grievance filing. First, there is no other reference in the minutes of the hearing that even approaches the subject of the Union's timeliness. Second, when McArthur stated under questioning from both parties that he called Andy Farmer, a Union agent, to inform him of the change in travel policy, he did not state when that conversation happened; nevertheless, Cochran's representatives never followed up to ask McArthur for the date of that conversation–a question they would have been derelict not to ask McArthur if they were trying to establish how long the Union knew about the policy before filing the grievance. Finally, the fact that neither Balanik nor any other Cochran representative mentioned the untimeliness of the grievance in their closing statements–even as they touched on several other arguments in closing–provides further evidence that they never intended to raise the timeliness issue.

Because the record thus offers no evidence that Cochran raised the timeliness of the Union's grievance at the arbitration hearing, I would reverse the district court's vacatur of the Union's award.