WILSON, Circuit Judge, dissenting: This should be an easy case. The Bankruptcy Code provides—and the Supreme Court and this Circuit agree—that a confirmed Chapter 13 bankruptcy plan enjoys a preclusive, binding effect. A creditor may only escape treatment under a plan if it objects to plan confirmation and then appeals the overruling of that objection. Title Max admitted to the bankruptcy judge, on the record, that it did not object, and the bankruptcy judge confirmed the plan. Title Max now says that it did object and that it therefore can elude the plan’s terms. But the law required an objection before plan confirmation, not a retroactive recasting of motions as objections. Therefore, Title Max remains bound by the confirmed plan. The majority disregards these simple facts, choosing instead to move to the merits. In doing so, the majority rewards Title Max—by allowing it to sidestep the preclu-sive effects of a confirmed bankruptcy plan—for changing litigation positions on appeal. I am troubled that we would incen-tivize an attorney’s inconsistent representations before the courts of this Circuit, including before the judges of this panel, and I thus cannot join the majority’s opinion. Aside from these concerns, I am skeptical of the majority’s holding that state law may operate to divest a federally-created bankruptcy estate of a piece of property that all parties, and the majority, admit entered that estate pursuant to the Bankruptcy Code. Such a holding undermines long-established principles of bankruptcy law and the Code itself, and runs contrary to the purpose of Chapter 13 bankruptcy. Therefore, I respectfully dissent.[1] I. We review a bankruptcy court’s legal findings de novo and its factual findings for clear error. In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993), Whether a party made an objection is a factual finding subject to clear error review.[2] Smith v. Estelle, 562 F.2d 1006, 1007 n,2 (5th Cir. 1977)[3] (“The district court concluded that Smith had not objected ,.,, and this finding is not clearly erroneous.”); accord In re AFY, 734 F.3d 810, 819 (8th Cir. 2013) (noting that a finding that a party did not object is a finding of fact); Ham v. Patterson, 474 Fed.Appx. 386, 387 (4th Cir. 2012) (per curiam) (treating a district court’s finding that a party did not file objections as a finding of fact); R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int’l Ass’n Local Union No. 33, 335 Fed.Appx. 516, 519-20 (6th Cir. 2009) (applying clear error review to whether an objection was raised); Clark v. Foti, 50 F.3d 1032, 1995 WL 136127, at *1 (5th Cir. 1995) (per curiam) (“The district court clearly erred in finding that Clark had failed to file any objections.”). We refuse to find clear error unless we are left “with the definite and firm, conviction that a mistake has been committed.” Coggin v. Comm’r, 71 F.3d 855, 860 (11th Cir. 1996) (emphasis added). We “may not substitute our own findings of fact for that of the district court, and may reverse only if the record lacks substantial evidence to support” the finding below. Id. (internal quotation mark omitted). When there are “two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Here, the bankruptcy court specifically found that “Title Max failed to timely object to [plan] confirmation,” and that Title Max “slept on its rights by not timely objecting.”[4] Title Max repeatedly confirmed this to the bankruptcy judge, affirming that it indeed did not object.[5] Despite whatever recharacterizations Title Max and the majority make—which I reject below—a clear error review of the bankruptcy judge’s finding that Title Max did not object is insurmountable. Far from being left with a definite and firm conviction that the bankruptcy judge made a mistake in this finding, a review of the record reveals ample evidence to support the fact that Title Max affirmatively declined to object. This comes primarily in the form of Title Max’s repeated admissions on the record that it did not object after repeated questioning from the bankruptcy judge. I can think of no stronger evidence to support the bankruptcy judge’s finding in this matter. Therefore, given the extremely deferential standard of review applicable to this case, I would affirm the bankruptcy court’s decision and find that Title Max did not object to plan confirmation and is therefore bound by the confirmed plan. However, I write further here because the majority commits legal error in applying an incorrect standard of review, under which I would still affirm. Moving past the objection issue, the majority then endorses a rule that will impede the effectiveness of our bankruptcy system and will undermine its purpose. II. Judges should be able to rely upon representations made to them by attorneys. Indeed, a “lawyer’s representations have long been accorded a particular expectation of honesty and trustworthiness.” Fire Ins. Exch. v. Bell, 643 N.E.2d 310, 312 (Ind. 1994); see also Model Rules of Prof'l Conduct r. 3.3 (Am. Bar Ass’n 2016) (explaining a lawyer’s duty of candor toward a tribunal). Under any standard of review, the record indicates that Title Max expressly stated to the bankruptcy judge that it did not object to plan confirmation. I see no reason why the bankruptcy judge should have been required to doubt this attorney’s representation. However, after today’s ruling, bankruptcy judges in this Circuit will no longer be able to safely take an attorney at her word with respect to confirmation objections (or lack thereof). Rather, these judges will need to scour the docket prior to each confirmation hearing, looking for any filings that could possibly be construed as objections to confirmation, lest they be transformed into objections on appeal. This outcome nullifies the point of giving the moment of plan confirmation any weight, and, simply put, imposes additional work on bankruptcy judges without justification. This is not the normal case of an objection preserving a position for appeal, as the majority puts it. Rather, a confirmed Chapter 13 bankruptcy plan has a specially codified, broadly defined, binding and pre-clusive effect. 11 U.S.C. § 1327(a). When a party has notice of an impending plan' confirmation, its failure to object to that confirmation precludes its post-confirmation challenge to the terms of the plan. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 276, 130 S.Ct. 1367, 1380, 176 L.Ed.2d 158 (2010); see Hope v. Acorn Fin., Inc., 731 F.3d 1189, 1193-95 (11th Cir. 2013) (“If a trustee, like a debtor or creditor, is obliged to make a timely objection to the confirmation of a plan, and foregoes an objection she is aware of, it is difficult to see why the trustee, like a debtor or creditor, would not also be bound by confirmation.”); Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 229.1 ¶ 3 (4th ed. 2010) [hereinafter Lundin] (“[T]he creditor that fails to object to confirmation and then to appeal an adverse decision is bound by the confirmed plan.” (footnote omitted)).[6] Plan confirmation even binds a creditor to an “illegal” plan provision unless the creditor has objected and appealed. Lundin § 229.1 ¶¶ 3, 77; see Espinosa, 559 U.S. at 275, 130 S.Ct. at 1380 (noting that even though the bankruptcy judge committed legal error in confirming a plan, the confirmation order remained “enforceable and binding” on the creditor because it “had notice of the error and filed to object or timely appeal”). In short, § 1327(a) prohibits rewarding litigants who “sleep on their rights” by failing to object to confirmation. Espinosa, 559 U.S. at 275, 130 S.Ct. at 1380; In re Young, 281 B.R. 74, 80 (Bankr. S.D. Ala. 2001). As was pointed out at oral argument,[7] “a lot rides” on whether a creditor objected to plan confirmation due to the confirmation’s conclusive and preclusive effect.[8] Any party in interest may object to plan confirmation. 11 U.S.C. § 1324(a). Such an objection must be filed and served upon the relevant parties, Fed. R. Bankr. P. 3015(f), and is to be made by motion, with “reasonable notice and opportunity for hearing” afforded to the party opposing the motion. Fed. R. Bankr. P. 9014(a). Objections to confirmation “may not be combined with other requests for relief.” M.D. Ga. Local Bankr. R. 9004-1(a)(2). Here, Title Max filed no objections to plan confirmation styled as such. It filed a “Motion for Relief from the Automatic Stay.”[9] Although Title Max concedes that under Fed. R. Bankr. P. 3015(f), it was required to “lodge an objection before the plan [was] confirmed,” it asserts “[t]hat is precisely what [it] did” by filing its motion. Appellant’s Br. at 23 n.ll. Title Max contends that its motion made the bankruptcy court “well aware that TitleMax objected to the plan before the confirmation order was entered.” Id. The majority agrees, and notes that Title Max “appeared at the hearing, and later filed post-hearing briefs, to reiterate its position.” This is simply not true. Title Max did not object to the confirmation of the plan, and the bankruptcy court was certainly not aware of the company’s objections prior to confirmation,[10] Appearing before the bankruptcy court at the oral argument on its motion, Title Max affirmatively stated— repeatedly—that it did not object and had not objected to plan confirmation.[11] Now, however, the company has represented to this court that it “objected ... before the bankruptcy court entered the Chapter 13 confirmation order,” Appellant’s Br, at 20, and that its motion for relief from stay “itself constituted an objection to the terms of the proposed plan.” 11th Cir. OA at 02:37, Perhaps most incredibly, Title Max told this court that it had appeared before the bankruptcy court “arguing the merits of [its] objection before the confirmation order was entered,” id, at 06:03, and was “lodging and arguing a merits objection before there was a confirmation order.” Id. at 06:16. The purported objections to which Title Max refers occurred during the very hearing where Title Max specifically disclaimed any objection to plan confirmation, despite repeated promptings from the bankruptcy judge. Bankr. OA at 07:67,17:44. Such behavior constitutes more than mere stylistic oversight, as the majority would treat it. It is a fact—Title Max did not object. But it now wishes to recast its motion as an objection, adopting a favorable appellate litigation position contradicting the one it adopted below. Bankruptcy law does not allow this. It requires a proper objection to plan confirmation in order to mount a challenge to the terms of the plan. The majority’s holding allows companies such as Title Max to advance novel legal arguments with no litigation risk. Title Max takes part in the post-confirmation litigation with the safe backstop of the already-confirmed plan, in which it receives nearly the entire benefit of its bargain—payment in full, plus five percent interest. If Title Max wins, it gets a pro-title-lender rule to advance in other cases (and a 2006 Dodge Charger). If it “loses,” it gets the cash equivalent of a 2006 Dodge Charger, plus five percent interest. This is precisely the “two bites at the apple” problem that rules like the one in § 1327(a) seek to prevent, and that this court has prohibited in the past. See, e.g., Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 543 (11th Cir. 2002) (en banc) (creating new pleading rule to prevent a plaintiff from getting “two bites at the apple” and “reaping] several benefits without taking any risks”). The majority notes that the pawnbroker in In re Young did not “in any way contest the plan’s consummation,” and therefore Young “provides a useful (and stark) contrast” to the case at bar. Here, however, not only did Title Max do absolutely nothing to contest confirmation—it actively asserted that it did not object to confirmation. This behavior far surpasses that of the pawnbroker in Young. Title Max did not merely sleep on its rights; it woke up, entered an appearance, and then affirmatively renounced them. The majority also correctly notes that the Fifth Circuit’s brief ruling in In re Boyd, 11 F.3d 59 (5th Cir. 1994), “isn’t quite on point.” In that case, a former debtor, in what appears to have been an attempt to reclaim his house, “filed his Chapter 13 petition thirty-three months after the foreclosure sale had been concluded,” which sale included his eviction and divested him of all rights in the property. Id. at 61. In essence, Boyd (likely fraudulently) listed property on his plan that was not his. The Fifth Circuit rejected his argument that his confirmed plan “magically revest[ed] Boyd with property that was never property of Boyd’s bankruptcy estate.” Id. at 60. All parties, and the majority, concede that the Dodge Charger entered the bankruptcy estate in this case, unlike in Boyd. The majority mistakenly focuses on “the pertinent moment of confirmation.” The pertinent moment is at the creation of the bankruptcy estate. If, as here, a confirmed bankruptcy plan provides for property of the bankruptcy estate—-which is created at the filing of a bankruptcy petition—the plan is binding as to that property. Boyd’s attempt to illicitly take back his already-lost house has nothing in common with this case: Boyd’s house never entered his bankruptcy estate. We should not require bankruptcy judges to do litigants’ jobs for them, .worrying about construing every motion and filing as an objection to plan confirmation. “Such a level of clairvoyance is not required by the bankruptcy laws,” Lamarche v. Miles, 416 B.R. 53, 60 n.8 (E.D.N.Y. 2009), and will threaten the reliability and efficiency of our Circuit’s Chapter 13 bankruptcy programs. See Lundin § 228.1 ¶¶ 5-6 (noting that before the Supreme Court’s clarification in Espinosa, “[m]any courts almost paternalistically (mis)interpret[ed] § 1327 to protect creditors from failing to protect themselves from the effects of confirmation,” and so “debtors and creditors couldn’t count on § 1327 to produce finality of rights and responsibilities in Chapter 13 cases with great enough certainty to ensure reliable and efficient Chapter 13 programs”). I would reject Title Max’s “brazen suggestion” that the bankruptcy judge “should have treated [its] yet to be heard motion in the stead of an actual objection [it] could have easily asserted but chose not to assert at the proper time.” Lamarche, 416 B.R. at 60 n.8. Instead, I would give heft to the text of § 1327(a) and incentivize creditors to properly object before confirmation. Only then will bankruptcy judges have a complete picture when deciding upon confirmation, and will creditors and debtors be able to “find finality and be assured of a settled and orderly resolution of the claims against the debtor,” Id. at 60. Whatever else, I certainly would not reward litigants for taking an opposite, more convenient position on appeal than the one taken below. Accordingly, I would affirm and find that Title Max’s appeal is barred because it failed to object to plan confirmation. III. A bankruptcy court sits in equity. In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986) (per curiam). Recognizing this, Congress gave bankruptcy judges great latitude to modify the, rights of holders of claims against the bankruptcy estate. In their equitable role, bankruptcy judges must attempt to “accommodate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors.” In re Johnson, 165 B.R. 524, 528 (S.D. Ga. 1994). That is exactly what the bankruptcy judge did in this case. After the Dodge Charger entered the bankruptcy estate (an occurrence that nobody contests), the bankruptcy judge changed Title Max’s secured claim to the vehicle into a right to loan repayment over the plan period in an effort to assist Wilber’s financial rehabilitation. Preserving Title Max’s rights, however, the bankruptcy judge provided for Title Max to receive the entire loan amount back, plus five percent interest. The bankruptcy judge had authority to do this under the Bankruptcy Code. The majority, contending that Congress has not spoken on the issue, confuses these straightforward facts by characterizing this case as one of state law deference. To the contrary, Congress has conclusively defined the creation and scope of a bankruptcy estate and has given bankruptcy judges vast authority to alter the rights of those with claims against this estate. Federal bankruptcy law thus controls, and state law cannot operate to alter the bankruptcy estate after its creation—and it certainly cannot serve to dispossess the bankruptcy estate of property. That is not to say that state law plays no role in bankruptcy, however. The filing of a Chapter 13 petition creates a bankruptcy estate comprised of “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). All such property, “wherever located and by whomever held,” becomes a part of the bankruptcy estate on the filing date. Id. State law serves to define the property interest and rights that enter the bankruptcy estate on that date. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (“Property interests are created and defined by state law.”). Once a piece of property becomes part of the bankruptcy estate, creditors step forward with their claims against that property. In Georgia, if, as is relevant here, the bankruptcy estate is created during the statutory grace period of redemption, a vehicle title lender has a secured claim—a “lien on the [vehicle] pawned for the money advanced, interest, and pawnshop charge[s] owed.” O.C.G.A. § 44-14-403(a); see 11 U.S.C. § 101(5)(A). The bankruptcy estate contains the vehicle itself. See 11 U.S.C. § 541(a)(1); O.C.G.A. § 44-14-403(b)(3), The bankruptcy court has the “very significant power” to dispose of claims against this estate and to “modify the rights of holders of secured claims.” 11 U.S.C. § 1322(b)(2); see Lundin § 104.1 ¶ 1. Through this ability, the bankruptcy court can fulfill the purpose of Chapter 13 bankruptcy: “[T]o enable an individual, under court supervision and protéction, to develop and perform under a plan for the repayment of his debts over an extended period.” H.R. Rep. No. 95-595, at 118 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6079, Because creditors “must receive payments only under the [bankruptcy] plan,” and may not “harass the debtor or seek to collect their debts,” Chapter 13 serves to “relieve[ ] the debtor from indirect and direct pressures from creditors,” and to enable the debtor “to support himself and his dependents while repaying his creditors at the same time.” Id. As such, Chapter 13 can only be effective when the bankruptcy judge has the authority to equitably modify the rights of all of those holding claims against the bankruptcy estate. In this case, Wilber’s bankruptcy estate was created on the date he filed his Chapter 13 petition. Because he filed the petition before his state law redemption period expired, Wilber, at that moment, had legal title to his car and a right to redeem it. The car and the attendant right to redeem became property of the bankruptcy estate on that date. Title Max retained a secured claim against the bankruptcy estate—a claim that the bankruptcy court modified under § 1322(b)(2), turning it into a structured repayment of the entire loan plus five percent interest. This should end the inquiry. Congress provided no mechanism for property of the bankruptcy estate to evaporate. Congress set the date of bankruptcy estate creation as the date of commencement of the case. Congress then gave the bankruptcy court plenary control over the disposition of property of the bankruptcy estate and its attendant claims in order to alow debtors to restructure their debts. However, the majority presses forward, asserting that the Bankruptcy Code’s “textual indicators” indicate that property may vanish from the bankruptcy estate. Searching for statutes that “speciffy] instances in which property may be added to or excluded from the bankruptcy estate based on post-petition events,” the majority first cites two provisions that permit the adding of property to the estate: 11 U.S.C. § 541(a)(6) (including “[proceeds, product, offspring, rents, or profits of or from property of the estate”) and 11 U.S.C. § 541(a)(7) (including any “interest in property that the estate acquires after the commencement of the case”). These provisions support the supplementing .of the bankruptcy estate, not the disappearing of property from it. The majority then cites 11 U.S.C. § 541(b)(8). Importantly, § 541(b)(8)—ap-pearing in a list of enumerated exclusions from the bankruptcy estate—contemplates a situation quite similar to the one at hand: Property of the estate does not include .., any interest of the debtor in property where the debtor pledged or sold. tangible personal property (other than .,. written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law ... where— (A) the tangible personal property is in the possession of the pledgee or transferee; (B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and (C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b). 11 U.S.C. § 541(b)(8). Under the interpretative canon of ex-pressio unius est exclusio alterius, when “a legislature has enumerated a list or series of related items, the legislature intended to exclude similar items not specifically included in the list.” Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1193 (11th Cir. 2011). Even assuming arguendo that property may leave the bankruptcy estate, Congress’s authoring of this exclusionary provision evinces a congressional intent to permanently include Wilber’s vehicle in his bankruptcy estate: The provision would apply to Wilber’s title loan but for the fact that he retained possession of the vehicle. If Congress wanted to exclude Wilber’s vehicle from his bankruptcy estate, it would not have specifically required Title Max to retain possession of the vehicle in order to qualify for the § 541(b)(8) exclusion. The majority’s holding also creates a bizarre incentive for Chapter 13 litigants, and perhaps for bankruptcy courts as well. It appears as though under the majority’s rule, if a plan is confirmed before the expiration of a debtor’s vehicle redemption period, the plan may modify the rights of secured creditors with respect to that vehicle under § 1322(b)(2). If the plan is confirmed after the redemption period expires, however, the vehicle evaporates from the bankruptcy estate, and the plan cannot apply § 1322(b)(2) to the creditor’s secured claim.[12] Therefore, after today’s holding, Georgia debtors in a title pawn situation will be in a rush to confirm their Chapter 13- plans, while Georgia title pawn lenders will be incentivized to deliberately delay confirmation until after the redemption period expires. The random date of redemption period expiration will take on increasing importance in Chapter 13 bankruptcy, and bankruptcy courts will be forced to police the confirmation timetable even more closely.[13] This awkward recasting of incentives shows the consequence of moving or un-bundling the “watershed date” of bankruptcy—the date that “creditors’ rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor’s exemptions is determined.” See Johnson, 165 B.R. at 528. Congress set this date as the commencement of the case, 11 U.S.C. § 541(a)(1), but the majority today contrarily moves it to the date of confirmation. This holding allows the scope of the “property of the bankruptcy estate” to remain in flux between commencement of the case and plan confirmation. It adds tremendously to the level of uncertainty encountered in Chapter 13 litigation, runs afoul of the statute, and will only increase the level of gamesmanship before the courts in this Circuit. The majority—while purporting to look to the implications of the “textual indicators” left to us by Congress—overlooks the actual text of the Bankruptcy Code, the written legislative history behind it, and the practical ramifications of its rule. Congress intended Chapter 13 bankruptcy to enable debtors to repay their debts, and to “retain the pride attendant on being able to meet one’s obligations.” H.R. Rep. No. 95-595, at 118 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6079. It did not intend, and did not write the Bankruptcy Code to allow, for Georgia title pawn lenders to invent loopholes in order to evade the jurisdiction of the bankruptcy courts. Unfortunately, the majority’s ruling enables just that, IV. Title Max did not object to plan confirmation—the record confirms this under either the appropriate clear error standard, or the incorrect de novo standard applied by the majority. This fact precludes the company from now challenging or escaping from the confirmed plan. The majority passes by this reality on its way to the merits. Once there, the majority, by moving the statutorily-mandated operative date for Chapter 13 bankruptcy, allows state law to strip a federal bankruptcy estate of property. Today’s holding is not supported by the Bankruptcy Code and is not justified in its encouraging of manipulation of our federal courts. Because I would not ignore the broad preclusive effect of plan confirmation, and because the Code must take precedence over state law, I respectfully dissent. . The majority seeks to limit the material parts of its decision to the facts of this case. See, e.g., Maj. Op. at 1307 ("In the particular circumstances of this case”); id. at 1308 ("on the unique facts of this case"); id. ("in the circumstances presented here”); id. at 1309 (“in the particular (and peculiar) factual and procedural posture in which this case arises”). However, a published opinion enjoys precedential status, binding future panels of this Circuit, the district courts, and the bankruptcy courts. See Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001), An unpublished opinion would have limited this decision to the "particular” and "peculiar” facts of the case. See Eleventh Circuit I.O.P. 6 ("Opinions that the panel believes to have no precedential value are not published.”). Additionally, there is little reason to believe that this case is “peculiar,” as TitleMax found itself in the same procedural posture in these two consolidated appeals. It has also litigated from similar postures in other cases in the bankruptcy courts. See, e.g., In re Thompson, No. 13-11235, 2014 WL 1330110 (Bankr. S.D. Ga. Mar. 31, 2014). .The majority gives short shrift to the standard of review in this case. It merely states that this appeal "presents questions of law, which we review de novo." It asserts that because Title Max "freely admits” that it "didn't formally 'object' to [plan] confirmation," this dissent’s Part I, explaining the appropriate clear error review, is "beside the point." However, far from "freely admitting]” that it failed to object, Title Max here repeatedly asserts that it did object, and actively challenges the bankruptcy court’s factual finding that it did not object. See, e.g., Appellant’s Br. at 23 n.11 ("The [bankruptcy] court was ... well aware that TitleMax objected to the plan before the confirmation order was entered. This is why the bankruptcy court erred in finding that TitleMax failed to object to the proposed plan before it was confirmed....”). Further, by recognizing that Title Max “did enough to preserve its position,” the majority necessarily implies that Title Max did need to take some action in order to do so. See Maj. Op. at 1308 ("We hold, though, that on the unique facts of this case, TitleMax ... adequately preserved its position....”); id. at 1308 ("[TitleMax's] argument was adequately teed up” in order to "preserve its position.”); id. at 1309 ("TitleMax did enough to preserve its position.”). Whether Title Max took that action is a finding of fact, as noted above. The majority wholly ignores the bankruptcy court’s finding that Title Max did not take this action, and instead makes the finding itself under an apparent de novo standard, It therefore deprives the bankruptcy court of the deferential clear error standard of review to which it is entitled. . See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the “old Fifth” Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit). . In re Wilber, 551 B.R. 542, 548 (Bankr. M.D. Ga. 2016) [hereinafter Bankr. Order], . Audio File for Doc. 16 at 07:57, In re Northington, 550 B.R. 644 (Bankr. M.D. Ga. 2016)) [hereinafter Bankr. OA] (Title Max stating that "we did not ... object in this case” because once the redemption period expired the vehicle was forfeited); id. at 17:44 (bankruptcy judge: "I can take judicial notice ... that there was no objection [to confirmation] .... You're not contending that .., your client objected to confirmation?” Title Max: "No. There's no contention in either case, Your Honor.”); see also Minute Entry for Doc. 15, Wilber, 551 B.R. 542 (incorporating into Wilber's docket Audio File from iWorthington). . See also In re Harvey, 213 F.3d 318, 321 (7th Cir. 2000) ("It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan .... The reason for this is simple.... [A]fter the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding.”); In re Simpson, 240 B.R. 559, 562 (B.A.P. 8th Cir. 1999) ("The sum of the judicial decisions that have considered the statutorily binding .effect of a confirmed plan ... is that if the confirmed plan treats the creditor, and if the creditor received proper notice of the plan and its proposed confirmation, the creditor’s only potential remedy for a plan it doesn't like is to appeal the order of confirmation..,. IMPAC cannot now raise issues it could have and should have raised by objecting to confirmation and in an appeal of the confirmation order.”). . See Oral Argument Recording for Case 16-17467, at 06:56 (Aug. 22, 2017) [hereinafter 11th Cir. OA], http://www.call.uscourts.gov/ system/files_force/oraLargument_recordings/ 1617467.mp3?download=l. . The majority states that I would "affirm on res-judicata grounds.” However, I would affirm on the broader § 1327(a) grounds, See generally Lundin § 229.1 ¶¶ 4-7 (explaining that "the statutory formulation of binding effect in § 1327(a) is broader than the res judicata effect of an ordinary judgment in the federal courts"). . The relevant timeline in the bankruptcy court is as follows: Title Max filed its motion for relief from the automatic stay on January 8, 2016, A confirmation hearing was held and the plan was orally confirmed on January 21, 2016. The bankruptcy court heard oral argument on Title Max’s motion on February 2, 2016, in which the parties requested and received additional time to brief the issues raised by the motion. On February 9, 2016, the court entered its written order formally confirming the plan. The court denied Title Max’s motion on April 29, 2016. . See Bankr. OA at 00:45 (bankruptcy judge: "We've confirmed both plans and there are no objections.”); id. at 03:31 (bankruptcy judge: "For some reason, the creditor [Title Max] didn’t object.... So, the question on my mind ... is what is the effect of confinnation of the plan that the creditor didn’t object to it, The creditor knew about the case, because creditor filed ... a motion for a relief before the hearing on confirmation, but for some reason, the creditor didn't object....”); see also Bankr. Order at 548 ("Title Max failed to timely object to confirmation. Title Max slept on its rights by not timely objecting,”). . Bankr. OA at 07:57 (Title Max stating that "we did not ... object in this case” because once the redemption period expired the vehicle was forfeited); id. at 17:44 (bankruptcy judge: "I can take judicial notice ... that there was no objection [to confirmation].... You’re not contending that ,,. your client objected to confirmation?” Title Max: "No. There’s no contention in either case, Your Honor.”), . The majority holds that the Dodge Charger did originally enter the bankruptcy estate; it disappeared later. Therefore, going forward, debtors’ bankruptcy estates could still include pawned vehicles, at least initially. . The majority takes issue with this incentives concern, asserting that "[t]he dissent’s view, for instance—in which physical possession of the vehicle makes all the difference— would incentivize pawnbrokers to repossess vehicles immediately upon default.” (citation omitted). However, the fact that physical possession of a pawned item "makes all the difference” in a § 541(b)(8) analysis is not merely ”[my] view,” it is the view of Congress, as codified in the Bankruptcy Code. See § 541(b)(8)(A).